## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ) | |
| ) | |
| NORBURY PARTNERS LP, et al, ) | |
|     *Plaintiffs*, ) | |
| ) | 3:24-CV-897 (OAW) |
| v. ) | |
| ) | |
| CONTINENTAL CASUALTY CO., ) | |
|     *Defendant*. ) | |
| ) | |
| ) | |

### RULING ON MOTIONS FOR JUDGMENT ON THE PLEADINGS

**THIS ACTION** is before the court upon the parties' cross-Motions for Judgment on the Pleadings ("Plaintiffs' Motion" and "Defendant's Motion,"[1] respectively, and together "Motions"). *See* ECF Nos. 34 and 37. The court has reviewed the Motions, Plaintiffs' opposition to Defendant's motion, *see* ECF No. 38, Defendant's reply in support of its motion, *see* ECF No. 40,[2] and the record in this matter, and is thoroughly advised in the premises.[3] After careful review, the court finds that Defendant's Motion must be **GRANTED,** and that Plaintiffs' Motion must be **DENIED.**

---

[1] Defendant's Motion also contains arguments opposing Plaintiff's Motion, per the court's instruction. *See* ECF No. 33.

[2] Defendant moved for permission to exceed the 10-page limit on its reply brief, but then ultimately filed a reply within the page limit. Accordingly, the motion for leave, ECF No. 39, is denied as moot.

[3] The court finds that the briefs are thorough and complete and that there is no need for oral argument on the Motion. Therefore, the request for oral argument is denied. See D. Conn. L. Civ. R. 7(a)(3) ("Notwithstanding that a request for oral argument has been made, the Court may, in its discretion, rule on any motion without oral argument.").

I.    **BACKGROUND**

This case arises from the soured employment relationship between certain Plaintiffs and a non-party investment firm ("Compass"), which ultimately devolved to the point that Compass sued Plaintiffs Nascimento and Jones in New York, and all remaining Plaintiffs in Connecticut, for various commercial torts.  The complaints in these underlying actions are more or less identical, alleging as follows:[4]

Compass employed Defendants Decio Nascimento (as CIO since 2016, ECF No. 1-6 ¶ 6; ECF No. 1-7 ¶ 53), Frank Jones (as VP Ops since 2019, ECF No. 1-6 ¶ 10, ECF No. 1-7 ¶ 60), and Sean Jussen (as Risk Manager since 2017, ECF No. 1-6 ¶ 9; ECF No. 1-7 ¶ 59).  Nasimento and Jussen entered into certain contractual agreements in connection with their employment at Compass.  ECF No. 1-6 ¶ 57; ECF No. 1-7 ¶ 56, 63.  Relevant here, both agreed to a non-disclosure provision that prevented them from using Compass's confidential commercial information.  *Id.*  Nascimento also agreed to certain restrictive covenants prohibiting him from hiring Compass employees, interfering with Compass's business relationships, or soliciting Compass investors for 12 months after the termination of his employment at Compass.  ECF No. 1-6 ¶ 56.  Nascimento also agreed to a non-competition provision that prohibited him from establishing a competing firm for 90 days after his employment with Compass terminated.  ECF No. 1-6 ¶ 55.

In May 2020, Nascimento both resigned from Compass and formed Defendant Norbury Partners LP,[5]  ECF No. 1-6 ¶¶ 115, 119; ECF No. 1-7 ¶¶ 108, 112, and the following month he hired Jones and Jussen, who both left Compass at the end of May

---

[4] The underlying complaints are filed as attachments to the complaint at ECF Nos. 1-6 and 1-7.  The relevant allegations are taken therefrom.

[5] Norbury Capital Partners GP, LLC, is an affiliate of Norbury Partners LP.  The distinction of the two entities is not relevant to this ruling and so the court will refer to both together simply as "Norbury."

2020, ECF No. 1-6 ¶¶ 116, 118; ECF No. 1-7 ¶¶ 109, 111.  The three executives allegedly then set about soliciting Compass's current investors and prospective clients to Norbury's rolls.  ECF No. 1-6 ¶ 118; ECF No. 1-7 ¶ 111

In service to this endeavor, Compass alleges that Plaintiffs deployed the investment strategy that Compass had spent years developing, and even plagiarized Compass's private placement memorandum ("PPM") in Norbury's marketing brochure. ECF No. 1-6 ¶¶ 123–25; ECF No. 1-7 ¶¶ 116–18.  Compass also alleges that Plaintiffs must be using its confidential, proprietary information and data to raise capital for Norbury. ECF No. 1-6 ¶¶ 135–142; ECF No. 1-7 ¶¶ 128–136.  Plaintiffs allegedly caused Compass's demise by propounding the misimpression that Compass's successes were attributable to the Norbury team, and that Norbury was Compass's corporate continuation. ECF No. 1-6 ¶¶ 133, 144; ECF No. 1-7 ¶¶ 126, 138.

Compass asserts several claims for breaches of contract against Nascimento in the New York action.  The first is predicated upon Nascimento's alleged violation of the non-competition provision insofar as he established Norbury, a competing firm, the same month he left Compass's employ.  ECF No. 1-6 ¶¶ 146–54.  The second is predicated upon Nascimento's alleged violation of the no-hire and non-solicitation provisions in his employment agreement insofar as he hired Jones and Jussen to Norbury the month after he left Compass and allegedly solicited at least one of Compass's investors in August 2020.  *Id.* ¶¶ 155–66.  The final breach of contract claim is predicated upon Nascimento's alleged violation of the non-disclosure provision.  *Id.* ¶¶ 167–78.  Compass alleges that Nascimento must have used Compass's proprietary commercial information (its record of success, investment strategies, and underlying data) in order to jump-start Norbury's

debut in the market, since without it Norbury would not have been able to make such favorable representations in certain disclosures to the Securities Exchange Commission ("SEC"). *Id.*

Substantially the same allegations of unauthorized use of Compass's confidential commercial information undergird the following claims of unfair competition, *id.* ¶¶ 192–97, unjust enrichment, *id.* ¶¶ 179–91, and misappropriation of trade secrets against both Nascimento and Jones in the New York action, *id.* ¶¶ 167–204.  These same allegations also form the basis for claims of unjust enrichment, ECF No. 1-7 ¶¶ 151–54, and violations of the Connecticut Uniform Trade Secrets Act against Jussen and Norbury, *id.* ¶¶ 154–59, 168-76, and one breach-of-contract claim against Jussen, *id.* ¶¶ 140–50, in the Connecticut action.

Finally, in the New York action, Compass also asserts that Nascimento's formation of a competing firm in May 2020 and his interference in Compass's "tangible expectancy" of an investment from a particular golden-goose investor (referred to as "Investor A") constitute breaches of his fiduciary duties to Compass.  ECF No. 1-6 ¶¶ 205–17. Compass also claims that Jones (in the New York Action, *id.* ¶¶ 218–26) and Jussen (in the Connecticut action, ECF No. 1-7 ¶¶ 160–67) aided and abetted Nascimento in the breach of Nascimento's fiduciary duties by providing substantial assistance in the diversion of Investor A's business from Compass to Norbury.

Relevant here, Defendant issued two insurance policies to Plaintiffs,[6] each of which insured against general commercial liability in substantially the same terms, but for different periods.  The first covered the calendar year beginning on October 6, 2020, ECF

---

[6] Defendant also issued umbrella policies to Plaintiffs that are not at issue here.

No. 1-1 at 6,[7] and the second covered the calendar year beginning on October 6, 2021, ECF No. 1-2 at 6. Thus, Plaintiffs had continuous coverage for the two-year period between October 6, 2020, and October 6, 2022, inclusive. Plaintiffs assert that Defendant has a duty to defend them in both underlying suits pursuant to these policies. They seek damages for the alleged breach of this duty and a declaration that Defendant does have duties both to defend and indemnify them in the underlying actions.

## II. **LEGAL STANDARD**

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (quoting *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020)). Accordingly, in reviewing such a motion, the court must "accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Latner v. Mount Sinai Health Sys., Inc*, 879 F.3d 52, 54 (2d Cir. 2018), as amended (Jan. 9, 2018). A pleading is deemed to include documents attached as exhibits. *Lynch*, 952 F.3d at 79 (citing Fed. R. Civ. P. 10(c)). Even where a particular document is not attached to a complaint, but is integral thereto, the court may consider its contents. *Id.* Thus, the court may review the relevant policies in conjunction with the allegations in the complaint.

Here, there are no facts in dispute. The court is presented with the purely legal question of whether declaratory relief is appropriate. *Stewart v. Old Republic Nat'l Title Ins. Co.,* 218 Conn. App. 226, 240 (2023) ("The question of whether an insurer has a duty

---

[7] As the policies do not have continuous internal pagination, citations herein shall refer to the page number assigned by the court's electronic case filing system.

to defend its insured is purely a question of law . . . .") (quoting *Lancia v. State National Ins. Co.*, 134 Conn. App. 682, 689, cert. denied, 305 Conn. 904 (2012)) (alteration in original).

Under Connecticut law,[8] "[a]n insurer's duty to defend is triggered if at least one allegation of the complaint falls even possibly within the coverage.'' *Nash St., LLC v. Main St. Am. Assurance Co.*, 337 Conn. 1, 9, 251 A.3d 600, 606 (2020) (quoting *Travelers Casualty & Surety Co. of America v. Netherlands Ins. Co.*, 312 Conn. 714, 739, 95 A.3d 1031 (2014)). Any doubt on this point is resolved in favor of the insured. *Id.* at 607. In deciding this question, the court must look to the relevant policies and Compass's claims and determine if any "allegation of the underlying complaint[s] falls even possibly within the scope of the insuring agreement or, even if it might, that any claim based on such an allegation is excluded from coverage under an applicable policy exclusion." *Id.* The duty to defend is broader than the duty to indemnify, *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760 (2013), and where there is no duty to defend, there also is no duty to indemnify, *Warzecha v. USAA Cas. Ins. Co.*, 206 Conn. App. 188, 192 (2021).

## III.  **DISCUSSION**

As a preliminary matter, the court must determine whether it is within its discretion to exercise jurisdiction over this action, and, if so, whether it should do so. Under Connecticut law, a controversy over the duty to defend is ripe for review where a lawsuit is filed which may trigger that duty. *Ohio Sec. Ins. Co. v. Veteran Constr. Servs., LLC*, No. 3:23-CV-257 (SVN), 2024 WL 1287583, at *7 (D. Conn. Mar. 26, 2024) ("[A]n insurer's

---

[8] The court agrees with all parties that Connecticut law governs this dispute.

6

duty to defend is triggered by the filing of a lawsuit . . . .").  There is no argument that subject matter jurisdiction is lacking in this action, and the court is satisfied that the underlying lawsuits render the question of Defendant's duty to defend (at least) ripe for review.  Thus, there is no jurisdictional impediment presented.

But whether to hear a claim under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201 et seq., still remains within the discretion of the court.  In determining whether to exercise that discretion, the court must consider whether declaratory judgment would (1) clarify or settle the legal issues involved; (2) finalize the controversy and offer relief from uncertainty; (3) be used merely for procedural fencing or a race to res judicata; (4) increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; (5) be the most effective remedy; and (6) comport with the principles of judicial efficiency and judicial economy.  *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99–100 (2d Cir. 2023).

The court finds these factors weigh in favor of hearing Plaintiffs' DJA claims.  Given that there are two underlying lawsuits, each of which imputes liability to Plaintiffs, which liability they contend has been assumed by Defendant via two insurance policies, there is considerable uncertainty in the state actions, which may be dispelled by a ruling here. Moreover, this is the exclusive means by which Defendant's legal obligations to the Plaintiffs may be clarified, and thus it is not only the most effective, but also the only remedy available to Plaintiffs.  Given the pendency of the underlying state actions, the court is satisfied that this case is not brought for any improper purpose.  And finally, the court concludes that the discrete issue presented in this case does not encroach upon any issue currently pending before any state court.  In sum, the court finds it appropriate

to determine the question presented, that is, the question of Defendant's duty to defend Plaintiffs in the underlying lawsuits.

Said differently, the question presented here is whether any of the claims brought by Compass in the state actions could be covered, even only possibly, by either of the policies Defendant issued to Plaintiffs.[9]

The court finds the operative factual allegations in both underlying actions to be the following: (1) Compass employed Nascimento, Jussen, and Jones for some period of time before they all resigned from their positions in May 2020; (2) Nascimento's employment agreement with Compass contained covenants restricting him from competing with, hiring employees from, and soliciting clients from Compass for a period after his employment; (3) Nascimento's and Jussen's employment agreements with Compass contained non-disclosure provisions protecting Compass's confidential commercial information; (4) in May 2020, Nascimento formed Norbury, a competing investment firm; (3) in June 2020, Nascimento hired Jussen and Jones to Norbury; (4) thereafter, at least (but not necessarily exclusively) in August 2020, Plaintiffs solicited Compass's prospective and current investors (notably, Investor A); and (5) to succeed in this solicitation, Plaintiffs used Compass's trade secrets without authorization, most particularly its record of success and investment strategies.

There are several relevant policy terms that are identical in both policies. Both policies insure against any "personal and advertising injury" ("PAI") caused by an offense committed during the policy period. ECF No. 1-1 at 114; ECF No. 1-2 at 129. PAI is defined in both policies to mean an injury arising out of (1) "[o]ral or written publication, in

---

[9] There is no dispute that all Plaintiffs are insured parties under the relevant policies.

any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services" or (2) "[t]he use of another's advertising idea in your 'advertisement,'" or (3) "[i]nfringing upon another's copyright, trade dress or slogan in your 'advertisement.'"  ECF No. 1-1 at 128; ECF No. 1-2 at 143. However, the policies exclude coverage for any PAI "[a]rising out of oral or written publication of material whose first publication took place before the beginning of the policy period," ("First-Publication Exclusion").  ECF No. 1-1 at 120; ECF No. 1-2 at 135.

Plaintiffs construe the underlying complaints to claim that they disparaged and/or defamed Compass and that they used Compass's advertising idea and infringed upon Compass's slogans insofar as they allegedly plagiarized Compass's PPM in Norbury marketing materials.

The court is skeptical of this proposition.  Nowhere in either underlying complaint does Compass allege that Plaintiffs spoke ill of it.  To the contrary, the allegations essentially are that Plaintiffs falsely laid claim to Compass's successes, misleading market players into believing that Norbury was the continuation of Compass.  Far from defaming or disparaging Compass, these allegations appear to tout its performance (at least insofar as Plaintiffs were involved with Compass).  And Plaintiffs appear to have taken the allegation of plagiarism out of context in order to extrapolate an entirely new claim therefrom, which claim nowhere actually is asserted in either underlying action.  All the claims predicated upon the unlawful use of non-public information refer specifically to Compass's so-called "track record" and investment strategy.  There is no stated claim predicated specifically upon the alleged plagiarism of Compass's marketing language. Rather, those were mere supporting factual allegations included to show that Norbury is

a competing organization insofar as it described itself as using the same investment strategies as Compass (indeed, purportedly verbatim investment strategies).

Nevertheless, construing the complaints as liberally as is reasonable, the court will accept for the purpose of this ruling that there is some slander implied in the assertion that Plaintiffs were responsible for Compass's successes, at least insofar as such assertions suggest that Compass's successes soon would end because those who remained were not skilled enough or savvy enough to continue to perform as Nascimento, Jussen, and Jones had done. And the court will resolve its doubt about the allegations of plagiarism in Plaintiffs' favor for present purposes. Thus, the court accepts that the complaints could predicate at least some of its claims upon the alleged plagiarism. Accordingly, the court finds that both complaints may have alleged some PAI.

However, these assumed PAIs do not relate to every claim in the underlying complaints. All the breach-of-contract claims, except for those predicated upon the alleged violation of a non-disclosure provision, are wholly unrelated to the PAIs assumed herein, and therefore cannot give rise to any duty to defend. And in any case, these claims clearly would be excluded from coverage, since each policy excludes coverage for PAIs "[a]rising out of a breach of contract . . . ." ECF No. 1-1 at 74; ECF No. 1-2 at 135. The same reasoning applies to those breach-of-contract claims which are predicated upon the alleged violation of a non-disclosure provision, although those arguably do relate to the PAIs assumed herein. And the breach-of-fiduciary-duty claims, while also arguably related to the PAIs assumed herein, explicitly deal with Nascimento's continuing duties post-employment, which both complaints allege only extended for 90 days after he left Compass. Accordingly, those claims necessarily deal only with conduct that occurred on

or before August 2, 2020, and so any conduct related to those claims precede the policy period by several months.[10]  Thus, if coverage exists, it must be predicated upon one or more of the commercial tort claims (unfair competition, unjust enrichment, and misappropriation of trade secrets in the New York action; and unjust enrichment and the two CUTPA claims in the Connecticut action).

As stated above, if there is any defamation and/or disparagement alleged in the underlying complaints, it is only as implied by Compass's allegation that Plaintiffs solicited Compass clients by representing to them that Norbury is continuing Compass's investment strategy using Compass's former team.  Thus, any defamation and/or disparagement necessarily is alleged only where solicitation is alleged.

There are only two specific allegations of solicitation in the underlying complaints. The first is that Plaintiffs contacted a Compass client in August 2020 to solicit their business.  The other is that Plaintiffs poached Investor A from Compass, which occurred around the same time as the August 2020 solicitation.   Therefore, each allegation occurred before the policy period, and thus any claim dealing with defamation and/or disparagement is not covered by either policy.  Plaintiffs attempt to argue that the relevant conduct occurred both before and during the policy period,[11] but even presuming that solicitation and any attendant disparagement/defamation continued into the policy period, that claim would be excluded by the First-Publication Exclusion, since the policies still would look back to the August 2020 conduct in order to determine coverage.

---

[10] These claims likely also would be subject to the exclusion for PAIs arising out of a breach of contract.
[11] The complaints actually only explicitly allege continuing *harm* from Plaintiff's conduct.  ECF No. 1-6 ¶¶ 197, 205 (stating that Compass "continue[s] to suffer . . . irreparable injury . . . ."); ECF No. 1-7 ¶¶ 159, 175 (stating that Compass "continue[s] to suffer . . . irreparable injury . . . .").  However, the court finds that both underlying complaints reasonably may be construed to allege continuing conduct as well, as both point to SEC filings from December 2020 and March 2021 that Compass asserts show that Plaintiffs continued to use their proprietary commercial information to raise capital.

Accordingly, Defendant has no duty to defend against any PAI based upon alleged defamation/disparagement.

Turning next to any PAI predicated upon Plaintiffs' alleged plagiarism of Compass's marketing material, the court comes to the same conclusion.  The first use of the allegedly plagiarized material occurred within disclosures to the SEC in July 2020.  Even presuming Plaintiffs' use of the plagiarized material continued into the policy period, the First-Publication Exclusion clearly applies.  Accordingly, Defendant has no duty to defend against any PAI based upon any infringement of Compass's slogans or use of Compass's advertising idea.

Plaintiffs' arguments to the contrary are without merit.  They first encourage the court to disregard any argument dealing with the timing of the offense conduct because Defendant allegedly did not include this ground for exclusion in its letters denying Plaintiffs' claims.[12]  But they do not provide, and the court has not found, any authority for the proposition that a denial of an insurance claim must lay out every possible exclusion for coverage, or that a court is restricted to considering only the specific exclusions cited in such a letter.  Accordingly, the court rejects that suggestion.

Plaintiffs next argue that Defendant concedes that the First-Publication Exclusion does not apply to all Compass's claims, but this argument merely reflects an incomplete and thus inaccurate understanding of Defendant's argument.   While Defendant's argument does not include application of the First-Publication Exclusion to all Compass's claims, that is because Defendant argues that most of Compass's claims clearly are excluded because the conduct underpinning those claims started and ended before the

---

[12] Defendant disputes that the policy period was not a stated basis for denying Plaintiffs' claims.

policy period began.  Thus, while Defendant did not present argument as to the applicability of the first-publication exclusion to all Compass's claims, that omission was not a concession.  And moreover, the court agrees with Defendant that any of Compass's claims that might be construed to claim a PAI do not claim a *covered* PAI due to the First-Publication Exclusion.

Finally, Plaintiffs argue that Defendant failed to show that these first publications were wrongful, or that any subsequent publications were substantially similar to those made prior to the policy period.  By "wrongful," it appears that Plaintiffs believe that in order to exclude coverage, Defendant must show that statements made before the policy period also led to injury suffered by Compass before the policy period.  But this position is not supported by the clear terms of the policies, which clearly refer to the time of first publication as the dispositive factor, not the time of injury.  Moreover, Defendant need not itself "show" wrongfulness; it is Compass who must allege that Plaintiffs' conduct violated state law, which it clearly has done in each of the underlying actions.  Therefore, that argument is rejected.

And the court finds, again, that it is not Defendant which must "show" anything other than that *Compass* alleged that the first publications of materials giving rise to PAI were similar to subsequent such publications.  With respect to the plagiarized material, as noted above, Compass's allegations aim to show that Norbury competes with Compass, not that the plagiarism itself gives rise to any claims.  Thus, there was no need to allege that subsequent publications of Norbury's brochure were similar to the July 2020 brochure.  Additionally, there is no clear allegation of the offense continuing into the policy period.  But even if the court were to presume that there were such allegations, Defendant

has reproduced those brochures, which Compass attached to the complaints, and it is clear that the language at issue was reproduced in December 2020 and March 2021. As the only disparagement or defamation at issue here is the inference derived from Plaintiffs' solicitation tactics (that is, the implication that Compass cannot continue to succeed without the Norbury team), that implication only derives from Plaintiffs' purported practice of telling Compass clients that Norbury was using Compass's team to run Compass's investment strategy, the only explicit allegations of which clearly occurred before the policy period. To the extent the complaints can be construed to allege continuing conduct, the specific continuing conduct is Norbury's particular method of solicitation, which necessarily gives rise to the same inferred disparagement. Had Compass alleged that Norbury used some other solicitation tactics, then there could be no inference of defamation or disparagement. Said differently, the same presumption that gives rise to any PAI in the first instance also demands application of the First-Publication Exclusion.

The court notes that other provisions in the policies also may exclude coverage on other grounds. For example, both parties devote significant argument to whether an exclusion for the misuse of trade secrets would apply. But given that it is completely clear and unambiguous that the only claims to which any duty to defend could attach arose from conduct which predated the policy period, the court need not address those arguments.

14

For the reasons laid out herein, the court concludes that Defendant clearly and unambiguously has no duty to defend Plaintiffs against Compass either in the New York action or in the Connecticut action.  Consequently, Defendant also has no duty to indemnify Plaintiffs with respect to any judgment which may be awarded in either action.

IV.    **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiffs' Motion for Judgment on the Pleadings, ECF No. 34, is **DENIED.**

2. Defendant's Cross-Motion for Judgment on the Pleadings, ECF No. 37, is **GRANTED.**

3. The court hereby declares that Defendant has no duty to defend nor any duty to indemnify Plaintiffs in relation to either of the underlying actions brought by Compass in New York or Connecticut.

4. The Clerk of Court respectfully is asked to enter judgment in Defendant's favor consistent with this ruling and to please close this case.


**IT IS SO ORDERED** at Hartford, Connecticut, this 19th day of February, 2026.


_____/s/_____
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE